IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| EDWARD P.,<br><br>Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br><br>Defendant. | Court No. 2:21-cv-00526-CMR<br><br><br>MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION<br><br><br>Magistrate Judge Cecilia M. Romero |

All parties in this case have consented to the undersigned conducting all proceedings (ECF 9). 28 U.S.C. § 636(c). Plaintiff, pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Commissioner of Social Security (Commissioner) denying his claim for disability insurance benefits under Title II of the Social Security Act (Act).  After careful review of the entire record (ECF 13–14), the parties' briefs (ECF 17, 21), Defendant's supplemental authority (ECF 22), and arguments presented at a hearing held on August 16, 2022 (ECF 24), the undersigned concludes that the Commissioner's decision is supported by substantial evidence and legally sound. For the reasons stated on the record at the hearing and as discussed below, the court hereby DENIES Plaintiff's Motion for Review of Agency Action (ECF 17) and AFFIRMS the decision of the Commissioner.

## I.       STANDARD OF REVIEW

The scope of the court's review of the Commissioner's final decision is specific and narrow. As the Supreme court recently reiterated, "[o]n judicial review, an ALJ's factual findings

. . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The threshold for evidentiary sufficiency under the substantial evidence standard is "not high." *Id.* at 1154. Substantial evidence is "more than a mere scintilla"; it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Under this deferential standard this court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). The court's inquiry, "as is usually true in determining the substantiality of evidence, is case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Biestek*, 139 S. Ct. at 1157.

## II.     BACKGROUND

Plaintiff applied for benefits in February 2018, alleging disability beginning November 2015, due to anxiety disorder, panic disorder, and congenital heart defect (Certified Administrative Transcript (Tr.) 99, 138–40, 287–88). After a hearing, an administrative law judge (ALJ) issued a November 2019 decision finding that Plaintiff was not disabled (Tr. 135–53). The Appeals Council remanded that decision back to the ALJ (Tr. 155–56). In December 2020, the ALJ issued a new decision finding that Plaintiff was not disabled (Tr. 12–30).

The ALJ followed the five-step sequential evaluation for assessing disability. 20 C.F.R. § 404.1520(a)(4).[1] The ALJ found at step two that Plaintiff had the following severe impairments: valvular heart disease, depression, anxiety, panic disorder, and attention deficit hyperactivity

---

[1] Citations to the Code of Federal Regulations are to the 2020 edition of 20 C.F.R. Part 404.

disorder (ADHD) (Tr. 18). *See* 20 C.F.R. § 404.1521. The ALJ found that Plaintiff's Peyronie's disease was not a severe impairment and that Plaintiff had not established his posttraumatic stress disorder (PTSD) was a medically determinable impairment (Tr. 18). At step three, the ALJ considered Plaintiff's valvular heart disease under Listing 4.06, finding the criteria not met (Tr. 19). The ALJ considered Plaintiff's mental impairments under Listings 12.04, 12.06, and 12.11, finding a mild limitation in understanding, remembering, or applying information; and moderate limitations in interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself (Tr. 19–20).

The ALJ then found that Plaintiff had the residual functional capacity (RFC) to perform medium exertional work with the following non-exertional limitations: he could occasionally climb ladders, ropes, or scaffolds; frequently climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; occasionally be exposed to extreme heat; perform complex tasks; perform goal-oriented but not assembly line paced work; occasionally interact with coworkers, supervisors, and the public; and adapt to routine changes in the workplace (Tr. 21). At step four, the ALJ found that, given this RFC, he was unable able to perform past relevant work as a sales clerk and hospital clerk (Tr. 24). The ALJ found at step five that Plaintiff could perform jobs existing in significant numbers in the national economy, including laundry worker and routing clerk, unskilled medium work (Tr. 25). The ALJ therefore concluded that he was not disabled and denied disability benefits (Tr. 25). The Appeals Council then denied Plaintiff's request for review (Tr. 1–6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.981; 422.210(a). This appeal followed.

## III.    DISCUSSION

Plaintiff makes two arguments. First, Plaintiff argues that the RFC is inadequate because, on remand from the Appeals Council, the ALJ failed to adequately assess an opinion authored by consultative examiner and psychologist John Hardy, Ph.D. Second, Plaintiff argues that the ALJ "placed out sized reliance" on Plaintiff's ability to drive when evaluating his subjective symptom reports (ECF 17, Plaintiff's Opening Brief (Pl. Br.)). As discussed below, the ALJ applied the correct legal standards, and his decision is supported by substantial evidence. There is therefore no reversible error.

### A.    The Decision Reflects Proper Consideration of the Opinion of Dr. Hardy

Plaintiff first argues that the ALJ's findings are not supported by substantial evidence because he failed to account for a limitation contained within Dr. Hardy's report regarding his ability to maintain a schedule (Pl. Br. at 6–11). Because Plaintiff applied for benefits on or after March 27, 2017 (Tr. 287–88), the ALJ applied a new set of regulations for evaluating medical evidence that differs substantially from prior regulations.[2] Under amended new regulations, the ALJ focuses on the persuasiveness of the medical opinion using five factors. 20 C.F.R. § 404.1520c(a)–(c). The amended regulations direct the ALJ to explain how he considered the

---

[2] On January 18, 2017, the agency published revisions to its regulations regarding the evaluation of medical evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)); *see Revisions to Rules Regarding the Evaluation of Medical Evidence*, 81 Fed. Reg. 62,560, 62,578 (proposed Sept. 9, 2016) (explaining the proposed implementation process).

factors of supportability[3] and consistency,[4] which are the two most important factors in determining the persuasiveness of a medical source's medical opinion. *Id*. § 404.1520c(b)(2).

Applying the amended regulations, the ALJ appropriately assessed Dr. Hardy's opinion—which was the only medical opinion in the record (Tr. 19, 23). 20 C.F.R § 404.1520c. He determined that Dr. Hardy supported portions of his opinion with a mental status evaluation showing generally normal results (Tr. 23; *see* Tr. 530–35). *Id*. § 404.1520c(c)(1) (supportability). Dr. Hardy observed that Plaintiff did not show memory complications; he remembered three of three unrelated items immediately and with a 10-minute delay, and his long-term memory was good (Tr. 19, 23; *see* Tr. 531–32). Dr. Hardy further observed that Plaintiff had "excellent attention and concentration" (Tr. 534). Although Dr. Hardy stated that it was "possible" that Plaintiff had "some subtle neurocognitive impairment," Dr. Hardy observed that Plaintiff's perceptual reasoning results were "excellent" and there was "nothing significant about the pattern of scores suggesting significant neurocognitive damage or impairment" (Tr. 535). Dr. Hardy concluded that, if Plaintiff received benefits, he was capable of managing them (Tr. 535).

Dr. Hardy also stated that his "impression [was] that [Plaintiff] would have difficulty maintaining a regular schedule, as his ability to get out and overcome his anxiety is a tenuous prospect typically" (Tr. 535). The ALJ determined that this portion of Dr. Hardy's opinion was

---

[3] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).

[4] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

inconsistent with the rest of the record and therefore unpersuasive (Tr. 23). 20 C.F.R. § 404.1520c(c)(2) (consistency). Plaintiff had normal mental status examinations, exhibiting normal mood, affect, and behavior (Tr. 1009, 1020). He was able to answer all questions and understand events at the hearing (*see*, *e.g.*, Tr. 31–97). There was nothing significant in the record suggesting difficulty with memory, recall, or understanding (Tr. 23). Plaintiff was able to concentrate adequately to watch sports and other television programs, attend live drawing sessions, and write (Tr. 20, 22; *see* Tr. 374). He was able to stay engaged at Dr. Hardy's mental status examination that lasted approximately one hour and twenty minutes, and his ability to stay mentally focused doing art was reportedly two hours (Tr. 20; *see* Tr. 532). Plaintiff was able to take care of two pet cats, perform personal care such as dressing, bathing, and grooming with some variations, prepare simple meals, do some chores, drive, travel in a vehicle, go out alone, and shop (Tr. 20, 22; *see* Tr. 370–77). Moreover, there were no records of emergent mental health care or inpatient mental health treatment.

The ALJ also rejected this statement of Dr. Hardy's because it was "vague and not sufficiently specific in objective and vocationally relevant terms" (Tr. 23; *see* Tr. 535). Because Dr. Hardy's statement did not inform the ALJ what Plaintiff could "still do despite [his] impairment(s)," or whether he had an impairment-related limitation in his ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting, the court agrees that his statement did not meet the regulatory criteria of a medical opinion. 20 C.F.R. § 404.1513(a)(2). It was reasonable for the ALJ to find this statement was unpersuasive because it failed to provide specific functional limitations.

6

*See Fulton v. Colvin*, 631 F. App'x 498, 501 (10th Cir. 2015) (rejecting the argument that the ALJ erred in evaluating medical source opinions because "neither doctor gave an opinion about the functional limitations, if any, that these conditions imposed").

Because the ALJ complied with the regulatory framework and his decision is supported by substantial evidence, the court disagrees with Plaintiff's argument. The ALJ provided sufficient reasons for finding Dr. Hardy's statement unpersuasive including that Plaintiff had normal mental status examinations, and no neurocognitive damage or impairment (Tr. 23; *see* Tr. 535, 1009, 1020). The ALJ also properly found that one portion of the report was vague and did not include vocationally relevant terms, which meant it did not meet the regulatory criteria of a medical opinion. 20 C.F.R. § 404.1513(a)(2). Finally, the ALJ properly addressed the mandates of the Appeals Council's order when he reevaluated Dr. Hardy's statement by assessing its consistency and supportability. *See* 20 C.F.R. §§ 404.977(b), 1520c(b)(2). The court declines Plaintiff's invitation to reweigh the evidence and finds that the ALJ did not commit reversible error in his evaluation of Dr. Hardy's opinion. *See Hendron*, 767 F.3d at 954.

**B.      The ALJ's consideration of Plaintiff's subjective statements and the resulting RFC finding are supported by substantial evidence**

Plaintiff's second argument is that the ALJ failed to appropriately evaluate his symptoms when he relied too heavily on his ability to drive (Pl. Br. at 11–16). The court disagrees. The ALJ adequately discussed Plaintiff's symptoms and found that his statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 21–22). *See* 20 C.F.R. § 404.1529. An ALJ is not required to discuss every piece of evidence in the record. *See Clifton v. Chater*, 79 F.3d 1007,

1009–10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

The RFC assessment must address the claimant' s reported symptoms. *See* 20 C.F.R. § 404.1529; Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *3; *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ' s credibility and RFC determinations are inherently intertwined."). The ALJ acknowledged that Plaintiff claimed to experience difficulty keeping up with work pace, problems with understanding and following instructions, difficulty with focus and concentration, limited ability to interact with others, and panic attacks (Tr. 21–22). However, the ALJ gave well-supported reasons for concluding that Plaintiff's reported symptoms were not as severe as he claimed, including objective medical evidence, the efficacy of his counseling and medications, and his daily activities.

Specifically, the ALJ pointed to Plaintiff's ability to work part-time, perform routine household chores and shopping, care for himself and his cats, socialize with family and friends multiple times per week, and participate in live drawing sessions (Tr. 22; *see* Tr. 370–75, 520, 734). *See* 20 C.F.R. §§ 404.1529(c)(3)(i) (an ALJ must consider a claimant's activities); § 404.1571 ("Even if the work you have done [during a period of claimed disability] was not substantial gainful activity, it may show that you are able to do more work than you actually did."). He also considered Plaintiff's reports that he can go to public places such as movie theaters and restaurants, and he attended a concert in an audience of around 100 (Tr. 22; *see* Tr. 530). He could

drive, follow a recipe, and prepare meals (Tr. 22; *see* Tr. 370–75, 534). He sometimes helped care for a friend's daughter, who was thirteen at the time (Tr. 22; *see* Tr. 532). Upon examination, he had normal functioning and memory, was alert and oriented times three, and was able to maintain focus and concentration (Tr. 22; *see* Tr. 530–35, 737–38). Plaintiff had not had to seek emergent mental health care or inpatient mental health treatment. Based on this evidence, the ALJ found that Plaintiff's allegations of disabling symptoms were not consistent with the record (Tr. 17). *See* 20 C.F.R. § 404.1529(c)(3); *see also* SSR 16-3p, 2017 WL 5180304 (providing guidance on how ALJs evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims).

Plaintiff does not point to any specific treatment note or piece of evidence that the ALJ failed to consider. Rather, he challenges only one of the ALJ's reasons for discounting his allegations— his "over reliance" on Plaintiff's ability to drive (Pl. Br. at 11–16). Specifically, Plaintiff argues that the ALJ erred because he relied on boilerplate language in his assessment of the abilities required for driving. Whether or not he relied on boilerplate language, it was appropriate for the ALJ to consider that Plaintiff was able to drive. The ALJ questioned Plaintiff as to whether he could drive and Plaintiff testified that he could (Tr. 40). The ALJ considered Dr. Hardy's report which documented that Plaintiff could drive (Tr. 531) as well as the function report in which Plaintiff admitted he could drive (Tr. 373).

This court recently rejected a similar argument in *Brandy R. v. Kijakazi*, 2:21-cv-006160-DAK, 2022 WL 1307832, at *1 (D. Utah May 2, 2022). In *Brandy R.*, the ALJ used the same language when considering the plaintiff's abilities to drive. *Id*. The court held that the ALJ did not over-rely on the plaintiff's ability to drive while making his decision. Instead, the ALJ considered

what he believed to be inconsistencies regarding the plaintiff's driving abilities in the record. Because the ALJ considered the entirety of the record and expressly evaluated many other factors in his decision, the court found no evidence to support that the ALJ over-relied on Plaintiff's ability to drive while making his decision, or that the ALJ's inclusion and consideration of the language in the disputed footnotes tainted his entire decision. *Id*. at *4.

Here, the court similarly finds that the ALJ did not just rely on Plaintiff's driving when assessing his symptoms. He further considered the objective medical evidence, the efficacy of Plaintiff's counseling and medications, and his daily activities. Agency regulations lay out a number of factors that an ALJ must consider when evaluating a claimant' s symptoms. *See* 20 C.F.R. § 404.1529(c)(3). As such, an ALJ is not required to go factor by factor through the evidence, discussing how the evidence relates to each factor. Instead, the ALJ need only set forth the specific evidence on which he relied in evaluating Plaintiff's symptoms. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *Poppa*, 569 F.3d at 1171. Because the ALJ did that here, this court affirms the Commissioner's decision.

## IV.   CONCLUSION

Because the ALJ's decision is supported by substantial evidence and legally sound, it is AFFIRMED. Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296–304 (1993).

DATED this 7 September 2022.

Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah

10